**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE COMPAK COMPANIES, LLC,        )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     Nos. 03 C 7427
                                  )          08 C 4665
JIMMIE L. JOHNSON, ET AL.,        )
                                  )
          Defendants.             )

### MEMORANDUM OPINION

Before the court are the bankruptcy court's proposed findings of fact and conclusions of law with respect to the defendants' motion for summary judgment.  Except as modified below, we accept the bankruptcy court's recommendations and we grant defendants' motion for summary judgment on Counts I and II of plaintiff's complaint.

### BACKGROUND

BMJ Partners ("BMJ") purchased certain assets "free and clear of all liens, claims, encumbrances and interests" from bankruptcy debtors Compak Corporation ("Compak") and Communion Packaging Company ("CPC") pursuant to 11 U.S.C. § 363.  BMJ then assigned those assets to the plaintiff, The Compak Companies, LLC ("TCC").  TCC alleged in its complaint that defendant Jimmie Johnson, Compak's founder and former principal, wrongfully obtained "legal

title" to certain patents that rightfully belonged to Compak.[1] Johnson, in turn, assigned the patents to PatPak Corporation (another company formed and controlled by Johnson), which licensed the patents to Compak. He then caused PatPak and Compak to sublicense the patents to defendant DuoTech Holdings, LLC ("Holdings"). These machinations were all part of Johnson's alleged scheme to retain the benefits of the patents in the face of his companies' impending insolvency. TCC's legal theory has changed somewhat, but it is ostensibly still pursuing a constructive-trust claim against whichever party or parties hold legal title to the patents-in-suit (Count I) and a patent-infringement claim against Holdings and its affiliate DuoTech Packaging, LLC ("Packaging," and in conjunction with Holdings, "DuoTech") (Count II). We referred those counts to the bankruptcy court because, we concluded, they were "related to" Compak's bankruptcy. See The Compak Co., LLC v. Johnson, No. 03 C 7427, 2004 WL 2034083, *3 (N.D. Ill. Sept. 2, 2004); see also 28 U.S.C. § 157(a) (authorizing district courts to refer to a bankruptcy court matters that are "related to a case under title 11."). DuoTech and defendant Bruce Carlson, the president of Holdings and the manager of Packaging (collectively, the "DuoTech Defendants"),

---

[1] Johnson filed for chapter 7 bankruptcy shortly after TCC filed its complaint. (See Answer and Affirmative Defenses of Joseph A. Baldi, Chapter 7 Trustee of the Estate of Jimmie L. Johnson, filed in Adv. Proc. No. 04-A-04028, at 28.) Johnson's trustee has joined the DuoTech Defendants' objections to the bankruptcy court's recommendations.

have moved for summary judgment on both counts.  Because the issues raised in Counts I and II are not "core" bankruptcy matters as defined in 28 U.S.C. § 157(b), this court must enter final judgment "after considering the bankruptcy judge's proposed findings and conclusions."  See 28 U.S.C. § 157(c)(1).  The bankruptcy court has reviewed the parties' summary-judgment submissions and recommends that we grant defendants' motion for summary judgment.[2]  We review de novo "those matters to which any party has timely and specifically objected."  Id.  Before addressing those matters, a brief summary of the parties' dispute will be helpful.

On April 7, 1992, Johnson applied for a patent for a container designed to hold wine and communion wafers for religious services. (Findings of Fact ¶ 9.)  Several months later Johnson assigned to Compak all of his "right, title and interest in any intellectual property rights whatsoever he owns in any manufacture of packaging of sacramental wine, juice and/or communion wafer or other such food product and any invention related thereto including, without limitation," Johnson's patent application.  (Id. at ¶ 10; see Bill of Sale for Personal Property, dated July 9, 1992, attached as Ex. 4 to TCC's App. of Ex.)  The USPTO granted Johnson's application and issued U.S. Patent No. 5,246,106 (the "'106 patent") on September 21, 1993.  (Findings of Fact ¶ 9.)  Between 1993 and 1998

[2]  For clarity's sake we will refer to the bankruptcy court's findings of fact and conclusions of law separately (e.g., "Finding of Fact ¶ 1," and "Conclusions of Law ¶ 1 (Count I)"), although they appear in the same memorandum.

the USPTO issued three other patents to Johnson: U.S. Patent Nos.
5,456,351 (the "'351 patent"), 5,584,388 (the "'388 patent") and
5,746,312 (the "'312 patent," and together with the '351 and '388
patents, the "Subsequent Patents"). (Id. at ¶ 11.) Neither side
has challenged the bankruptcy court's conclusion that the
Subsequent Patents are "related to the ideas and inventions which
are the subject of the '106 patent." (Conclusions of Law ¶ 1 (Count
II).) Notwithstanding his earlier agreement with Compak, Johnson
purported to assign the Subsequent Patents to PatPak.[3] PatPak and
Compak then executed an agreement in May 1997 (the "PatPak
License") granting Compak a license to use certain intellectual
property in its business, including the '351 and '388 patents and
the application that the USPTO would later grant as the '312
patent. (PatPak License, attached as Ex. 26 to TCC's App. of Ex.,
at 1-3.)

In 2001, Compak entered into a series of agreements with
Holdings, Johnson and PatPak purporting to grant Holdings a license
to use all four patents. (See Findings of Fact ¶¶ 12-15; TCC's
App. of Ex. at Ex. 30-32, 42.) Only two of these agreements are
relevant here: (1) an Agreement, dated July 9, 2001, between Compak
and "Duo-Tech;" and (2) a License Agreement, dated August 29, 2001,
between Holdings, Compak, PatPak and Johnson. (See Findings of

---

[3] The scant evidence of this assignment in the record consists entirely of
references to it in other documents.

Fact ¶¶ 13-14; <u>see also</u> TCC's App. of Ex. at Ex. 32 and 42.)  The July 2001 Agreement refers to all four patents as the "Process" and recites that Compak is the "sole assign of the Process by the inventor, Jimmie L. Johnson." (Agreement, dated July 9, 2001, § 1.)  The August 2001 License Agreement recites that Compak is the "sole and exclusive owner of" the '106 patent, and the "sole and exclusive licensee of" the Subsequent Patents from PatPak. (License Agreement, dated August 29, 2001, §§ 1, 8, 22.)  Both agreements purport to grant Holdings or "Duo-Tech" the right to use all four patents that defendants are alleged to infringe. (Findings of Fact ¶ 15.)  But they do differ substantially in their terms: among other differences, the July agreement contains minimum-royalty requirements not present in the August agreement.

Compak filed for chapter 11 bankruptcy on June 10, 2002; CPC filed approximately four months later and the bankruptcy court consolidated the two cases.  (<u>Id.</u> at ¶ 3.)  Compak's amended schedule of executory contracts and unexpired leases, which Compak filed with the bankruptcy court on August 9, 2002, listed "Duo-Tech" as a party to an executory contract identified as a "patent license" and included an address for that company. (<u>Id.</u> at ¶ 16; <u>see</u> First Am. Summary of Schedules, attached as Ex. I to Supp. in Support of DuoTech Defs.' Mot. for Summ. J., at Schedule G.)  On February 28, 2003, Compak filed its "Motion to Sell Business Real and Personal Property and to Shorten Notice Period" (the "Sale

Motion"). (Findings of Fact ¶ 17.) The notice of the Sale Motion (the "Notice") consisted of a copy of the motion and a copy of a proposed asset purchase agreement between Compak and a stalking-horse bidder. (Id. at ¶ 18.) Compak did not send the Notice to Holdings, and Holdings was not represented at the Sale Motion hearing. (Id. at ¶ 19; Conclusions of Law ¶ 10 (Count II).) BMJ was the successful bidder at a public auction for the debtors' assets and the bankruptcy court entered an order approving the sale on March 24, 2003 (the "Sale Order"). (Findings of Fact ¶ 4.) The Sale Order authorized the debtors to sell their "Business Assets" — defined as "substantially all of [their] business real and personal property, excluding bankruptcy causes of action and related claims and cash" — to BMJ "free and clear of all liens, claims, encumbrances and interests." (Sale Order, attached as Ex. 62 to TCC's App. of Ex., ¶¶ 6 and G.) The Sale Order also attached and incorporated the Asset Purchase Agreement between Compak and the stalking-horse bidder. (See id. at ¶ G ("The Debtors are authorized to sell the Business Assets to BMJ pursuant to sections 363 and 105 of the Bankruptcy Code and on terms substantially comparable to those of the Asset Purchase Agreement attached hereto[.]").) That Agreement lists "Assets to be Sold by Compak" and specifically identifies the '106 patent as well as Compak's "right, title and interest in and under all Leases, Contracts and Permits, which are being assigned to and assumed by Purchaser."

(Sale Order at Ex. A, ¶ 1.)  BMJ assigned the purchased assets to
TCC in April 2003.  (Findings of Fact ¶ 5.)

The debtors' chapter 11 reorganization was converted to a
chapter 7 liquidation on April 3, 2003.  (Id. at ¶ 3.)
Approximately six months later Packaging filed an interpleader
complaint in the bankruptcy court against the debtors' chapter 7
trustee, BMJ, PatPak and Johnson alleging that it did not know
which party was owed royalties under the August 2001 license.  (The
record is curiously silent concerning when and how DuoTech actually
learned of the sale.)  The bankruptcy court has approved a
settlement in the interpleader action between DuoTech and the
trustees for the Compak and Johnson estates.  That agreement,
assuming it was consummated, transferred to DuoTech whatever rights
and interests the trustees may have had in the patents-in-suit and
related property.  (See Order Approving Compromise and Settlement
of Claims, dated November 29, 2007, at Ex. A (hereinafter, the
"Settlement Order.").)

We turn now to the parties' objections to the bankruptcy
court's proposed findings of fact and conclusions of law.

## DISCUSSION

**A.    Whether the August 2001 License Was Invalid *Ab Initio*.**

The bankruptcy court has concluded that it is irrelevant
whether the August 2001 license is invalid, as TCC contends,
because in that event the July 2001 agreement would still be

effective.[4] (Conclusions of Law ¶ 6 (Count II).) And because both
agreements purport to grant DuoTech the right to use all four
patents, defendants are entitled to summary judgment on TCC's
patent infringement claim so long as one of the two licenses
survived the bankruptcy sale. (Id. at ¶¶ 7-8.) But the July
Agreement includes minimum-royalty requirements, not included in
the August license, that DuoTech apparently did not satisfy in the
contract's first two years. (See Interpleader Compl. ¶ 27
(alleging that DuoTech anticipated making its first royalty payment
as a result of "certain pending sales" in September 2003).) Under
the July Agreement, "[f]ailure to pay royalties that are due shall
render this Agreement null and void." (License Agreement, dated
August 29, 2001, § 3); see B. Braun Medical, Inc. v. Abbott Labs.,
124 F.3d 1419, 1426 (Fed. Cir. 1997) ("[V]iolation of valid
conditions entitles the patentee to a remedy for *either patent
infringement or breach of contract*.") (emphasis added). We agree
with TCC that the July 2001 agreement was binding (see *supra* n. 2);
the document is complete on its face and expressly states that it
"becomes a complete and binding Contract upon its acceptance as
signified by the signatures below." (See Agreement, dated July 9,

---

[4] TCC "specifically" objects to paragraph 13 of the bankruptcy court's findings
of fact, arguing that the July 2001 agreement was binding and not a mere "draft."
(See Findings of Fact ¶ 13 (The latest license agreement between Compak and
DuoTech "was dated August 29, 2001, and purported to modify a similar license
agreement draft circulated among the parties in July 2001.").) The more
pertinent issue, we think, is whether the August license superceded the July
license. We conclude, however, that TCC's objection is sufficient to trigger de
novo review of this question. See 28 U.S.C. § 157(c)(1).

2001, at 2.)  But the August 2001 agreement did not merely purport to modify the earlier agreement — the parties mutually agreed that it "superced[ed] any preexisting agreements between" the parties concerning the license's subject matter. (License Agreement, dated August 29, 2001, ¶ 19); cf. Doyle v. Holy Cross Hosp., 708 N.E.2d 1140, 1145 (Ill. 1999) (concluding that the defendant's unilateral insertion of an additional contract term was not supported by consideration).  And it did more than simply alter the minimum royalty requirement — it added additional parties (PatPak and Johnson) and provisions, some of which are mutually beneficial. (See, e.g., License Agreement, dated August 29, 2001, ¶¶ 7 (confidentiality) and 14 (insurance and indemnification).)  We conclude that the August 2001 agreement superceded any previous agreements between the parties.  TCC made several other arguments in response to defendants' summary-judgment motion concerning the August 2001 agreement's enforceability. (See TCC's Opp'n to DuoTech Defs.' Mot. for Summ. J. at 15-16.)  TCC did not develop these arguments in the bankruptcy court and it has not raised them again here in response to the bankruptcy court's proposed conclusions. We reject TCC's argument that the August 2001 license was invalid or unenforceable *ab initio*.

**B.   Whether the Sale Order Extinguished the August 2001 License**

Section 363(f) authorizes bankruptcy courts to approve the sale of a debtor's property "free and clear of any interest in such

property" if one of five conditions is satisfied. See 11 U.S.C. §
363(f). "[O]ne of those conditions is the consent of the interest
holder, and lack of objection (provided of course there is notice)
counts as consent." FutureSource, LLC v. Reuters Ltd., 312 F.3d
281, 285 (7th Cir. 2002). The bankruptcy statute does not define
"interest," but courts have interpreted the term broadly. See
Precision Indus., Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537,
545-46 (7th Cir. 2003). A leasehold in real property is an
"interest," id., as is a license in intellectual property. See
FutureSource, 312 F.3d at 285. Applying section 363(f), as
construed by Qualitech and FutureSource, the bankruptcy court had
authority to extinguish DuoTech's license in the bankruptcy sale,
at least with DuoTech's consent (or lack of objection). Without
specifically identifying DuoTech's interest, or identifying what
subsection of § 363(f) it was relying on, this is what the
bankruptcy court purported to do. (See Sale Order ¶ G & H); see
also Qualitech, 327 F.3d at 541, 548 (upholding sale order that
extinguished all "liens, claims, encumbrances, and interests" not
specifically excluded by the order).

TCC does not dispute that Compak did not send the Notice to
DuoTech at the address listed in Compak's bankruptcy schedules.
See Fed. R. Bankr. P. 2002(g) (Unless a creditor specifies a
different mailing address, notices must "be mailed to the address
shown on the list of creditors or schedule of liabilities,

whichever is filed later."). It does contend, however, that DuoTech had actual notice of the sale through other channels. Two documents in the record suggest that Carlson, DuoTech's president, had notice as early as July 2002 that Compak had filed for bankruptcy. (See Email from David Seitelman to Bruce Carlson, dated July 26, 2002, attached as Ex. 47 to TCC's App. of Ex.; Fax from Bruce Carlson to Ken Marchetti, dated July 29, 2002, attached as Ex. 49 to TCC's App. of Ex.) This is insufficient, by itself, to satisfy due process in a bankruptcy sale under chapter 11. See, e.g., In re Metzger, 346 B.R. 806, 818 (Bankr. N.D. Cal. 2006) ("In a chapter 11 case, the creditor who is not given notice, even if he has actual knowledge of reorganization proceedings, does not have a duty to investigate and inject himself into the proceedings."). TCC also argues that we should modify the bankruptcy court's findings to reflect that the Notice was served on three individuals — Ron Bowen, Kenneth Binkley and Glenn Johnson — each purportedly affiliated with DuoTech entities. (TCC's Am. Obj. at 3; see Notice, attached as Ex. 56 to TCC's App. of Ex., at 4, 6, 8.) Carlson's affidavit states that during 2003, the year that Compak sold its assets to BMJ, Holdings had only two officers: Carlson and Rick Alvarado, neither of whom was served with the Notice. While some documents refer to Bowen, Binkley and Johnson as having a connection with DuoTech, they do not contradict Carlson's

affidavit.[5]   (TCC apparently never tested its suspicion that
DuoTech had notice by way of a deposition or requests to admit.)
And despite multiple opportunities, TCC has not objected to the
bankruptcy court's conclusion that the Sale Notice was unclear as
applied to executory contracts like DuoTech's license.[6]   (See
Conclusions of Law ¶ 17 ("Even if the Defendants had actual notice
or were served with the Sale Motion, that notice would not have
been 'of such a nature as reasonably to convey the required
information' that the property rights of the Defendants were in
jeopardy in the sale.") (quoting Mullane v. Central Hanover Bank &
Trust Co., 339 U.S. 306, 314 (1950).)   The Notice implies that the
purchaser would assume the debtors' executory contracts.  (Findings
of Fact ¶ 20); see Fogel v. Zell, 221 F.3d 955, 962 (7th Cir. 2000)
("If the notice is unclear, the fact that it was received will not
make it adequate.").   We agree with the bankruptcy court that,
under these circumstances, "terminating the DuoTech License
pursuant to the Sale Order would violate Holdings' right to due
process of law under the Fifth Amendment to the Constitution of the
United States."   (Id. at ¶ 15.)

---

[5]  (See Carlson Memo., attached as Ex. 57 to TCC's App. of Ex. (undated document
that appears to be an informal memorandum regarding the proposed structure of a
limited liability company); Duo-Tech Company Profile, attached as Ex. 57 to TCC's
App. of Ex., at 25 (document dated August 2001, approximately 15 months before
the Notice was sent); see also TCC's App. of Ex. at Ex. 48-50 (informal memoranda
listing or referring to members of DuoTech's "team.").

[6]  Neither party disputes that the contract was executory.  See In re Superior
Toy & Mfg. Co. Inc., 78 F.3d 1169, 1172 n.3 (7th Cir. 1996) ("An executory
contract is a contract on which performance remains due to some extent on both
sides.") (citation and internal quotation marks omitted).

Based upon its conclusion that the DuoTech Defendants did not receive proper notice, the bankruptcy court concluded that its order was "void" insofar as it purported to extinguish defendants' license. (Conclusions of Law ¶ 18); see also In re Metzger, 346 B.R. at 819. TCC challenges the bankruptcy court's conclusion on the ground that, as a bona fide purchaser, it acquired title to Compak's intellectual property free and clear of DuoTech's license notwithstanding DuoTech's lack of notice.[7] See In re Edwards, 962 F.2d 641, 645 (7th Cir. 1992).

1. *In re Edwards* and *Fed. R. Civ. P. 60*

We referred Counts I and II to the bankruptcy court because we concluded that TCC sought relief that could affect the property available for distribution to Compak's creditors. See In re FedPak Systems, Inc., 80 F.3d 207, 213-14 (7th Cir. 1996). At the center of the parties' dispute, however, is a final sale order that was not stayed pending appeal. See Edwards, 962 F.2d at 643 (A sale without notice is improper, but it may not be rescinded on appeal if the sale has not been stayed.); In re Sax, 796 F.2d 994, 997 (7th Cir. 1986) (The lienholder "did not obtain a stay of the sale or of the order approving the sale, so there is nothing we can do

---

[7] We granted plaintiff leave to file amended objections in this court after it failed to raise its bona-fide purchaser argument in its objections to the bankruptcy court's conclusions. (See Order, dated Sept. 9, 2008, at Dkt. #73.) Defendants have renewed their objection to our ruling. TCC made its bona-fide purchaser argument in the bankruptcy court in its response to the defendants' objections. The entire matter, including defendants' own objections to the relevant portion of the bankruptcy court's conclusions, are subject to de novo review. We conclude that TCC has not waived this argument.

to affect the validity of the sale."). <u>Edwards</u> holds that when the time to appeal has passed the sale may be challenged, "if at all, only in accordance with the provisions of Rule 60(b) of the Federal Rules of Civil Procedure." <u>Edwards</u>, 962 F.2d at 643.[8] (The Court's decision in <u>Qualitech</u> suggests that there are limited instances where this rule does not apply, <u>see</u> <u>Qualitech</u>, 327 F.3d at 543, but defendants have not argued that this case is one of them.) Like the lienholder in <u>Edwards</u>, the defendants challenge the Sale Order on due-process grounds; but they have not filed a Rule 60 motion in the bankruptcy court. Indeed, TCC moved to dismiss their interpleader complaint on that basis (a motion that the bankruptcy court denied when TCC failed to appear at a hearing on the motion). This is not necessarily fatal to the defendants' claim. Our Court of Appeals has not squarely addressed the issue, but "a majority of circuits to have considered the power of a district court to vacate a judgment under Rule 60(b) have concluded that district courts have the discretion to grant such relief *sua*

---

[8]/ Defendants argue that the bankruptcy court "retained jurisdiction to consider the effect of its Sale Order, including determining if the § 363 sale was properly conducted." (Defs.' Resp. in Opp'n to TCC's Am. Obj. at 3-4.) Insofar as defendants contend that the bankruptcy court has general, unfettered discretion to reconsider its final orders, that is not the law of this Circuit. <u>See</u> <u>In re Met-L-Woods Corp.</u>, 861 F.2d 1012, 1018 (7th Cir. 1988) ("[W]e hold that confirmed sales — which are final judicial orders — can be set aside only under Rule 60(b). We conclude that the old inherent power of to reconsider bankruptcy orders has been merged into the rule."). If a party cannot bring itself within one of Rule 60's narrow exceptions, applicable to bankruptcy orders pursuant to Fed. R. Bankr. P. 9024, it is not entitled to relief from a final sale order. <u>See</u> <u>FutureSource</u>, 312 F.3d at 286 ("[T]he order approving a bankruptcy sale is a judicial order and can be attacked collaterally only within the tight limits that Fed.R.Civ.P. 60(b) imposes on collateral attacks on civil judgments.").

*sponte*." See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 385 (7th Cir. 2008). Alternatively, the court could construe defendants' interpleader complaint as a motion for relief from the Sale Order. See, e.g., In re MMH Automotive Group, LLC, 385 B.R. 347, 356 (Bank. S.D. Fla. 2008). On the other hand, we are not aware that the bankruptcy court has taken any action to vacate its order — we have only its proposed conclusion that the order is "void," a conclusion that we consider *de novo*.

After the bankruptcy court approves a sale, "the existence of fraud, mistake or a like infirmity would be necessary to set [it] aside." In re Chung King, 753 F.2d 547, 549-50 (7th Cir. 1985) (quoting In re Webcor, 392 F.2d 893, 898 (7th Cir. 1968)). "By far the most frequent mistake or infirmity held to warrant vacating a confirmed sale is defective notice to interested parties of the judicial sale." Id. at 551 (collecting cases). Edwards held, however, that a bona fide purchaser of property in a bankruptcy sale "free and clear of interests" acquires "good title" to the property notwithstanding an interest-holder's lack of notice. Edwards, 962 F.2d at 645-46. The plaintiff in that case held a second mortgage on property that the debtor sold in an approved bankruptcy sale. Id. at 642. More than a year passed before the lienholder moved to vacate the sale, cf. Fed. R. Civ. P. 60(c)(1), but it argued that its motion was timely because a "void" judgment may be set aside at any time. See Fed. R. Civ. P. 60(b)(4); see

also <u>In re Hanson</u>, 397 F.3d 482, 485, 487 (7th Cir. 2005) (affirming decision granting a creditor's Rule 60(b)(4) motion, which it filed five years after the bankruptcy court entered an order discharging student loan debt, because the creditor was not afforded due process). The <u>Edwards</u> Court rejected the lienholder's argument that an order entered without notice to an affected party is necessarily void: an erroneous jurisdictional finding, "[i]f it is not egregious," is "good against collateral attack, like any other erroneous but final judgment." <u>Edwards</u>, 962 F.2d at 644; <u>see also</u> <u>id.</u> ("[N]ot every jurisdictional defect makes an order approving a bankruptcy sale void, because a court has jurisdiction to determine its own jurisdiction."). This left the "practical question, in what circumstances can a civil judgment be set aside without limit of time and without regard to the harm to innocent third parties?" <u>Id.</u> Balancing the creditor's interest and the "strong policy of finality of bankruptcy sales," the court adopted a "strict rule in favor of the bonafide purchaser at the bankruptcy sale." <u>Id.</u> at 645-46. "The policy [of finality] would mean rather little if years after the sale a secured creditor could undo it by showing that through some slip-up he hadn't got notice of it." <u>Id.</u> at 645.

Defendants argue that BMJ was not an "innocent third party" and therefore TCC, its assignee, cannot rely on <u>Edwards</u>. <u>See</u> <u>Black's Law Dictionary</u> 1271 (8th Ed. 2004) (A bona-fide purchaser

is "one who has in good faith paid valuable consideration for property without notice of prior adverse claims"); see also In re Rock Indus. Machinery Corp., 572 F.2d 1195, 1197 (7th Cir. 1978) (adopting a similar definition for the term "good faith purchaser" in the precursor to 11 U.S.C. § 363(m)).[9]  It is unclear what "notice of prior adverse claims" means in this context: the lienholder in Edwards filed a proof of claim in the bankruptcy court and, arguably, the purchaser could have been charged with constructive notice of the lien on that basis.  See, e.g., In re Rock Indus., 572 F.2d at 1999.  There is authority for the proposition that *actual* notice of a third-party's interest would prevent the purchaser from acquiring bona-fide purchaser status. See In re Metzger, 346 B.R. at 817 (distinguishing Edwards on the ground that the purchaser had actual notice of the plaintiff's interest).  BMJ was one of Compak's creditors and was sent notices throughout the bankruptcy proceedings, whereas the purchaser in Edwards was apparently a stranger to the proceedings before the bankruptcy sale.  But the question, we think, is whether BMJ reasonably believed that it was acquiring Compak's property free and clear of interests, not whether it knew what interests the

---

[9]/  Defendants do not dispute that BMJ, who was the highest bidder at auction, paid "valuable consideration" for Compak's Business Assets.  (See Sale Order ¶ 16.)  They do contend that BMJ acted in bad faith, but their claim is predicated upon BMJ's failure to disclose at the sale hearing information that was already disclosed in the bankruptcy record.  If we did not conclude that Edwards was otherwise distinguishable, see *infra*, we would not grant defendants summary judgment based on this equivocal evidence.

bankruptcy court was purporting to extinguish.  See Edwards, 962 F.2d at 643 ("No one doubts [] that Noble was a bona fide purchaser who thought he was getting the property free and clear of all liens.").

The more telling difference between this case and Edwards is the nature of the interests at stake.  The lienholder in Edwards "suffered only a trivial loss of interest (the interest on $7,000 [the value of the lien on the proceeds after the trustee paid the first lienholder] during the period that it was in the hands of the trustee) as a result of the failure to notify it of the sale."  Id. at 645.  In effect, the bankruptcy court granted in the lienholder's absence all the protection it was due.  The same would be true in this case had Compak failed to notify a secured creditor.  (See Sale Order ¶ G (providing that any liens would attach "to the net proceeds of the sale in the same order of priority as such Liens possessed against the Business Assets.").) Defendants stand to lose much more if we conclude that the Sale Order extinguished their license notwithstanding their lack of notice.  Even if defendants were not subject to enhanced damages for willful infringement, see Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570-71 (Fed. Cir. 1996), an injunction could have a devastating impact on their business.  Moreover, they may have lost through no fault of their own a greater range or potential remedies in the bankruptcy court.  The Bankruptcy Code contains special protections

for patent licensees in the event that the trustee or debtor-in-possession rejects a license. <u>See</u> 11 U.S.C. § 365(n) (licensees may elect to retain their rights to use the licensed patents after the license is rejected). As we interpret <u>Qualitech</u>, § 365(n) would not prevent the trustee or debtor-in-possession from extinguishing a license in a sale of intellectual property free and clear of interests *provided that* one of § 363(f)'s conditions was satisfied. <u>See</u> <u>Qualitech</u>, 327 F.3d at 548; <u>see also</u> <u>id.</u> at 546 n.3 (assuming, based upon the appellant's acquiescence, that the sale free and clear of the appellant's leasehold was permissible under § 363(f)). It is unclear whether such a sale would be permissible without the licencee's express or implied consent. <u>See</u> 11 U.S.C. § 363(f)(2); <u>FutureSource</u>, 312 F.3d at 285 ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished in a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection *(provided of course there is notice)* counts as consent.") (emphasis added). Neither side squarely addresses the issue (<u>see</u> Defs.' Mem. at 10; TCC's Opp'n at 12), but we are not aware of any authorities that would support a finding that one of § 363(f)'s other subsections applied on these facts. If defendants had received clear notice that their interests were threatened, they could have withheld their consent altogether or tried to work out some other arrangement with Compak. <u>See</u> <u>In re Hanson</u>, 397 F.3d at 486

("Hanson's failure to serve ECMC with a summons and an adversary proceeding complaint effectively denied ECMC the opportunity of presenting an objection prior to the adjudication of its rights."). Or if, as appears unlikely, Compak was authorized to sell its intellectual property free and clear under another subsection of § 363(f), the defendants could have requested adequate protection under § 363(e). See Qualitech, 327 F.3d at 548. They were deprived of that opportunity, too. See In re MMH Automotive, 385 B.R. at 372.

We conclude that the Sale Order is "void" insofar as it purports to extinguish the defendants' license. See id. (fashioning a remedy short of rescinding the entire sale); In re Metzger, 346 B.R. at 819 (vacating a sale order only to the extent that it extinguished the creditor's interest); cf. Edwards, 962 F.2d at 645 ("[W]e have property interests on both sides of the equation here, since Guernsey wants to take away property that Noble bought, and Northwest financed, without compensating them for their loss."). The bankruptcy court concluded, as a corollary to its conclusion that its Sale Order was partially void, that BMJ "acquired Compak's interest in the DuoTech License through its purchase of the debtors' assets and that BMJ assumed the DuoTech License Agreement." (Conclusions of Law ¶ 19.) Defendants object to this conclusion because, they argue, Compak did not properly assume the license agreement before assigning it to BMJ. See 11

U.S.C. § 365(a) (requiring court approval to assume or reject any executory contract). It follows, they argue, that (i) Compak could not assign the license (see 11 U.S.C. § 365(f)(2)), (ii) the license was rejected by operation of law sixty days after the chapter 7 conversion (see 11 U.S.C. § 365(d)(1)), and (iii) defendants retained their rights to use the intellectual property under 11 U.S.C. § 365(n).[10] The upshot of defendants' argument is that TCC has, at most, a disputed claim to royalties stemming from defendants' use of the '106 patent. The bankruptcy court has concluded by implication that its Sale Order — disregarding the void provisions — was effective to approve both Compak's assumption of the license and its assignment to BMJ. See 11 U.S.C. §§ 365(a) and (f); In re Tleel, 876 F.2d 769, 770-71 (9th Cir. 1989) (order approving sale was effective to approve debtor's assumption); see also In re Consolidated Industries, 360 F.3d 712, 716 (7th Cir. 2004) ("We will not reverse a court's interpretation of its own order unless it is a 'clear abuse of discretion,' because a court that issued an order is in the best position to interpret it."). Even if the assumption and assignment did not strictly comply with § 365, see, e.g., In re Dehon, Inc., 352 B.R. 546, 559 (D. Mass. 2006), this is not an appeal of the bankruptcy court's Sale Order.

---

[10]/ Defendants effectively concede that Compak, as the debtor-licensor, could assume and assign the license with the bankruptcy court's approval. Cf. 11 U.S.C. § 365(c) (prohibiting trustees from assuming or assigning certain executory contracts without the other contracting party's consent).

Given the procedural posture of this case, and the "strong policy of finality of bankruptcy sales," we believe that a narrow remedy is appropriate. See In re Metzger, 346 B.R. at 819. We are not persuaded that the Sale Order was void except to the limited extent we have already indicated.

Because Holdings' license survived the bankruptcy sale the DuoTech Defendants are entitled to summary judgment on Count II of TCC's complaint.

**C.   TCC's Constructive-Trust Claim and the Parties' Rights in Subsequent Patents**

The bankruptcy court concluded that Compak acquired the rights to the Subsequent Patents pursuant to the 1992 Bill of Sale and that Johnson's purported assignment to PatPak was invalid. Defendants insist that Johnson's assignment to PatPak was valid and that they acquired PatPak's rights pursuant to their settlement agreement with the chapter 7 trustees. But they have not addressed the merits of the bankruptcy court's conclusion, insisting instead that the issue was beyond the scope of the referred counts because TCC made different arguments (e.g., fraudulent conveyance and breach of fiduciary duty) in its complaint. The fact that TCC chose to include these theories in its complaint, when a simple statement of its claim would have sufficed, does not mean that TCC was bound to pursue those theories throughout the litigation. See Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997)

("Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint."). TCC properly raised its alternative argument, and the bankruptcy court properly addressed it. Turning to the merits, we agree with the bankruptcy court that the Bill of Sale conveyed Johnson's interest in all future related inventions, including those that were later claimed in the Subsequent Patents. Johnson broadly conveyed,

> all of [his] right, title and interest in any intellectual property rights whatsoever he owns in any manufacture or packaging of sacramental wine, juice and/or communion wafer or other such food product and any invention related thereto including, without limitation, any rights to ideas, trade secrets, patents, patent application serial number 07-864-494 dated April 7, 1992, copyrights, trademarks, processes, methods and inventions relating to the packaging and sale of foodstuffs associated with any religious ceremony . . . .

(Bill of Sale, dated July 9, 1992, at 1.) The inventions claimed in all four patents are substantially similar, and the Subsequent Patents are derived from continuations or continuations-in-part originating in the patent application identified in the Bill of Sale. (See generally Subsequent Patents, attached as Exs. 8-9, 12 to TCC's App. of Ex.) All three describe "delivering communion" as a potential use. (Id.) They are clearly "related" to the "manufacture or packaging of sacramental wine, juice and/or communion wafer or other such food product." Accordingly, all right, title and interest in the Subsequent Patents vested in Compak by operation of law as they were issued. See Filmtec Corp.

v. Allied-Signal Inc., 939 F.2d 1568, 1573 (Fed. Cir. 1991) (when

a contract assigns rights in future inventions, title is conferred

by operation of law as the inventions come into being).[11]   The

purported license from Johnson to PatPak was a "nullity" — Johnson

could not convey the same property more than once, see id. at 1572

— as was the license from PatPak to Compak.   It follows, as the

bankruptcy court concluded, that a constructive trust is

"unnecessary because none of the defendants ever had legal title to

the patents before the bankruptcies were filed."   (See Order

Clarifying Proposed Findings of Fact and Conclusions of Law at 2.)

Accordingly, defendants' motion for summary judgment is granted as

to Count I.

As the bankruptcy court's conclusion suggests, this leaves

open the question whether the Sale Order conveyed the Subsequent

Patents to BMJ.   On the one hand, they were not identified as

Compak's property at the auction or in the Sale Order and the

attached Asset Purchase Agreement.   On the other, Compak and BMJ

plainly understood that the bankruptcy court was approving the sale

of all of Compak's property.   (See, e.g., Bill of Sale, attached as

---

[11]/   Johnson evidently believed, based on a legal opinion that he obtained from outside counsel, that he could retain ownership of the Subsequent Patents so long as he gave Compak a license to use the patents for "communion related invention[s]."   (See Letter dated May 1, 1997, attached as Ex. 21 to TCC's App. of Ex., at 2.)   The legal opinion refers generically to "courts" and "cases" but does not specifically cite any legal authority, so it is difficult to evaluate the attorney's conclusion.   In any case, defendants did not raise this theory in the bankruptcy court and they have not raised it here.   See United States v. Alden, 527 F.3d 653, 664 (7th Cir. 2008) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to parties.").

Ex. 3 to TCC's Resp. to DuoTech's Motion to Refer, at 1 (Compak agreed to sell to BMJ, and its "successors and assigns," "all of Seller's right, title and interest in and to all of the personal property of the Seller, tangible and intangible, wherever located.").) We recommitted the matter to the bankruptcy court in part to address this question because the answer turns on the proper interpretation of that court's order, but the court declined on the ground that it was not necessary to decide the referred counts. (Order Clarifying Proposed Findings of Fact and Conclusions of Law at 2-3.) At the same time, the court directed our attention to the defendants' settlement with the chapter 7 trustees. The settlement agreement — which was scheduled to close in May 2008 — does not resolve the ultimate question whether the trustees had anything to assign. (See Settlement Order ¶ 3.) We think the bankruptcy court should address this issue in the first instance, but that need not detain us here. The answer will not affect the outcome of TCC's infringement and constructive-trust claims. Therefore, we decline the parties' invitation to declare who owns the Subsequent Patents. We also decline to address DuoTech's argument that they are entitled to off-set their attorneys' fees against the amounts currently held in escrow by the clerk of the bankruptcy court. The interpleader action is the appropriate case in which to address these issues.

## CONCLUSION

Except as modified by the foregoing, we accept the bankruptcy court's findings of fact and conclusions of law and grant defendants' motion for summary judgment as to Counts I and II of TCC's complaint.  A status hearing is scheduled for June 3, 2009, at which time the parties should be prepared to discuss the remaining counts of TCC's complaint.

DATE:     June 1, 2009

ENTER:    _____

          John F. Grady, United States District Judge