**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

THE COMPAK COMPANIES, LLC          )
                                   )
          Plaintiff,               )
                                   )
          v.                       )     No. 03 C 7427
                                   )
JIMMIE L. JOHNSON, RON BOWEN,      )
BRUCE CARLSON, PATPAK, INC.,       )
DUOTECH HOLDINGS, INC., DUOTECH    )
PACKAGING, LLC, OLMARC PACKAGING   )
COMPANY, and URBAN MINISTRIES,     )
INC.,                              )
                                   )
          Defendants.              )

**MEMORANDUM OPINION**

Before the court is the motion to dismiss of defendants DuoTech Holdings, Inc., DuoTech Packaging, LLC, and Bruce Carlson (the "DuoTech Defendants"). For the reasons explained below we grant their motion in part, and deny it in part.

**BACKGROUND**

We will assume that the reader is familiar with our earlier opinion in this case, which discussed the background of the parties' dispute in detail. See The Compak Companies, LLC v. Johnson, 415 B.R. 334, 335-37 (N.D. Ill. 2009). Nevertheless, we think it would be helpful at this point to briefly revisit those facts to get a better understanding of where we are today.

In April 1992 defendant Jimmie Johnson applied for a patent

for a container designed to hold wine and communion wafers for religious services. Shortly thereafter he assigned his rights to the patent application, and any related patents, to Compak Corporation ("Compak"). The USPTO granted Johnson's application in 1993, and thereafter he applied for and received three additional, related patents. In 2001 Compak entered into a series of agreements with DuoTech Holdings, Johnson, and PatPak, Inc. granting DuoTech Holdings a license to use all four patents. Compak filed for bankruptcy in 2002. With the bankruptcy court's approval BMJ Partners — TCC's predecessor in interest — purchased "substantially all" of Compak's assets (excluding cash and bankruptcy causes of action) in March 2003.

TCC filed its original four-count complaint in this case on October 31, 2003, naming as defendants Jimmie Johnson, Ron Bowen, PatPak, Inc., Olmarc Packaging Company, and the DuoTech Defendants. In Count I TCC alleged that it was the rightful owner of the communion-cup patents and asked us to impose a constructive trust on the patents and any royalties derived therefrom. Count II alleged that the DuoTech Defendants were infringing those same patents. We granted the DuoTech Defendants' motion to refer those counts to the bankruptcy court because they were "related to" Compak's bankruptcy. See The Compak Co., LLC v. Johnson, No. 03 C 7427, 2004 WL 2034083, *3 (N.D. Ill. Sept. 2, 2004); see also 28 U.S.C. § 157(a). While those claims were pending in the bankruptcy

court, we stayed Counts III and IV alleging breach of contract against Olmarc Packaging Company ("Olmarc") and intentional interference with contract against Johnson, Ron Bowen, and the DuoTech Defendants. See Compak, 2004 WL 2034083, *3. Prior to Compak's bankruptcy Olmarc manufactured communion-cups for Compak. TCC alleged that Olmarc initially agreed to manufacture the cups for TCC, but was improperly induced to stop by the other defendants. (TCC further alleged that the defendants also persuaded other vendors to stop doing business with TCC.) At that time Olmarc allegedly held funds belonging to TCC in a reserve account that it improperly refused to turn over. We did not refer these claims to the bankruptcy court "because their resolution would not have any impact on the estate." Id. at *3.

On August 15, 2008 the bankruptcy court returned proposed findings of fact and conclusions of law concerning the DuoTech Defendants' motion for summary judgment on Counts I and II.[1] On June 1, 2009 we granted their motion, largely adopting the bankruptcy court's proposed findings. Compak, 415 B.R. at 335. We concluded that the parties' August 2001 license agreement superceded any previous agreements between the parties and that the agreement survived the bankruptcy sale. Id. at 338, 343. At a status hearing held shortly after our ruling TCC requested additional time to decide whether it wished to pursue Counts III

---

[1] On May 6, 2009 the bankruptcy court clarified certain portions of its findings in response to a limited remand from this court.

and IV of its complaint, a process that it dragged out for another nine months. TCC finally filed an amended complaint on March 24, 2010, adding one defendant (Urban Ministries, Inc.) and nine new claims. Counts I-IV reappear in substantially the same form in the amended complaint, although TCC acknowledges that we have entered summary judgment in the defendants' favor on Counts I and II. The amended complaint adds the following claims: two claims for declaratory judgment asking us to declare that TCC owns the communion-cup patents (Count V) and that the August 2001 license agreement is invalid (Count VI); fraudulent transfer under 740 ILCS 160/5 (Count VII); breach of the August 2001 license agreement (Count VIII); breach of a predecessor agreement, assuming we declare the August 2001 license agreement invalid (Count IX); an accounting of royalties under the August 2001 license agreement (Count X); injunctive relief to prevent unfair competition under the Lanham Act (Count XI); damages for unfair competition under the Lanham Act (XII); and common law trade name infringement (Count XIII). Urban Ministries is named as a defendant in the last two counts, which stem from its alleged use of the website "www.celebrationcup.com" in connection with sales of DuoTech's competing communion-cup product.

## DISCUSSION

**A.    Legal Standard**

The DuoTech Defendants contend that Counts VI, VII, and XIII

of TCC's amended complaint fail to state claims for relief.  See Fed. R. Civ. P. 12(b)(6).  The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)).  When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949.  However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

**B.    Count VI - Declaratory Judgment**

In Count VI of its amended complaint TCC asks us to declare that the parties' August 21, 2001 license agreement is invalid because it altered the parties' previous agreement without providing "adequate consideration." (Compl. ¶ 112.)  We held otherwise in our opinion granting the defendants' motion for

partial summary judgment. <u>Compak</u>, 415 B.R. at 337-38. The law of the case doctrine "reflects the idea that a single court should not revisit its earlier rulings unless there is a compelling reason to do so." <u>Sharp Electronics Corp. v. Metropolitan Life Ins. Co.</u>, 578 F.3d 505, 510 (7th Cir. 2009). "This presumption against reopening matters already decided reflects interests in consistency, finality, and the conservation of judicial resources, among others." <u>Minch v. City of Chicago</u>, 486 F.3d 294, 301 (7th Cir. 2007). TCC argues that the doctrine only applies to final judgments, citing <u>United States v. U.S. Smelting Refining & Min. Co.</u>, 339 U.S. 186, 198 (1950). But our Court of Appeals has construed <u>U.S. Smelting</u> to apply "only when a party is arguing that law of the case precludes a court that has not yet considered the issue from reaching the merits of the issue on appeal." <u>Matter of Oil Spill by Amoco Cadiz off the Coast of France on Mar. 16, 1978</u>, 954 F.2d 1279, 1291-92 (7th Cir. 1992). Even though our prior ruling is interlocutory, we should not revisit it without "a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." <u>Santamarina v. Sears, Roebuck & Co.</u>, 466 F.3d 570, 571-72 (7th Cir. 2006).

In response to the defendants' motion to dismiss TCC rehashes arguments that it made in response to their motion for partial summary judgment. (Pl.'s Resp. 2-4.) Indeed, the relevant portion

of TCC's current brief is taken virtually verbatim from its response to that earlier motion. We previously considered and rejected TCC's arguments, and it has not cited any "compelling reason" to revisit our ruling. <u>Santamarina</u>, 466 F.3d at 572. As for TCC's argument that the defendants procured the agreement in bad faith, it had an adequate opportunity to develop that theory before (or in response to) the defendants' summary judgment motion. But to that point in the case — nearly four years after TCC filed its original complaint — TCC cited nothing in support of its argument except a few ambiguous statements in correspondence between the parties. Cf. <u>Goodman v. National Security Agency, Inc.</u>, 621 F.3d 651, 654 (7th Cir. 2010) (Summary judgment is the "'put up or shut up' moment in litigation."). TCC cannot be heard to complain that the record was incomplete when we decided the defendants' earlier motion. Count VI is dismissed.

Although the defendants have not moved to dismiss Count IX, alleging that they breached the parties' previous license agreement, it is likewise inconsistent with our earlier ruling. <u>See</u> <u>Compak</u>, 415 B.R. at 338 ("We conclude that the August 2001 agreement superceded any previous agreements between the parties."). Therefore, Count IX is also dismissed.

**C.    Count VII — Fraudulent Transfer**

In Count VII of its amended complaint TCC alleges that the license agreement constitutes a fraudulent transfer under 740 ILCS

160/5.  It further alleges that it has standing to bring this claim
because BMJ — TCC's predecessor in interest — was one of Compak's
creditors at the time of the transfer. (Am. Compl. ¶ 115); see also
740 ILCS 160/5 ("A transfer made or obligation incurred by a debtor
is fraudulent as to a creditor . . . .") (emphasis added).  The
DuoTech Defendants argue that this claim is untimely, and TCC
concedes that it filed it outside the four-year statute of
limitations applicable to such claims.  See 740 ILCS 160/10 (four-
year statute of limitations for fraudulent-transfer claims).  But
TCC argues that its claim relates back to the date of the original
complaint.  A claim relates back to the original complaint when it
arises "out of the conduct, transaction, or occurrence set out — or
attempted to be set out — in the original pleading." Fed. R. Civ.
P. 15(c)(1)(B).[2]  TCC's claim plainly arises from conduct set forth
in the original complaint.  (See, e.g., Original Compl. ¶¶ 28-30,
40-44.)  TCC filed its original complaint within four years after
the transfer it is challenging.  Its claim is timely.

The defendants also suggest that our earlier ruling precludes
a finding in TCC's favor on its fraudulent conveyance claim.
(Defs.' Reply at 5.) We disagree.  A contract may be supported by
consideration — i.e., enforceable under contract law — and also
constitute a fraudulent conveyance under the statute.  See, e.g.,
Scholes v. Lehmann, 56 F.3d 750, 756 (7th Cir. 1995).  If the

---

[2]  The defendants' reliance on Illinois state law is misplaced.

debtor executed the contract with the intent to defraud its creditors, or if it did not receive "equivalent value" for the exchange and knew (or should have known) that insolvency was imminent, then the transfer is fraudulent. See 740 ILCS 160/5. The DuoTech Defendants' motion to dismiss is denied as to Count VII.

**D.    Count XIII — Trade Name Infringement (Unfair Competition)**

The DuoTech Defendants argue that we should dismiss Count XIII because common law unfair competition has been superceded by statute in Illinois. But they do not cite any authority for this proposition in their opening brief and seem to abandon the argument in their reply. See United States v. Useni, 516 F.3d 634, 658 (7th Cir. 2008) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation and internal quotation marks omitted). Their argument that TCC has not pled the elements of common law unfair competition, raised for the first time in their reply brief, is likewise waived. See United States v. Wescott, 576 F.3d 347, 354 (7th Cir. 2009)("Arguments raised for the first time in a reply brief are waived."). Even if the defendants had not waived that argument, it has no merit. The defendants cite Zenith Electronics Corp. v. Exzec, Inc., No. 93 C 5041, 1997 WL 798907, *14 (N.D. Ill. Dec. 24, 1997), which described the common law tort of unfair competition as a nebulous

doctrine encompassing a range of claims, including tortious interference with prospective economic advantage. But the <u>Zenith</u> court did not purport to define the doctrine outside the context of that particular case involving "circumstances arising from alleged interference with third party relations." <u>Id.</u> Count XIII does not purport to allege tortious interference; it is instead a claim for common law trademark infringement. TCC alleges that Urban Ministries used TCC's trademark, the "Celebration Cup," to lure customers to its website where they were offered a similar, competing product. TCC further alleges that the DuoTech Defendants "continued the deceptive use of [TCC's] trade name" after it acquired UMI's communion-cup business. (Am. Comp. ¶ 94.) Count XIII states a claim for infringement.

## CONCLUSION

The defendants' motion to dismiss (119) is granted as to Counts VI and IX and those counts are dismissed with prejudice; it is denied as to Counts VII and XIII.


DATE:          December 8, 2010


ENTER:         _____

               John F. Grady, United States District Judge