**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE COMPAK COMPANIES, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 7427 |
| ) | |
| JIMMIE L. JOHNSON, RON BOWEN, ) | |
| BRUCE CARLSON, PATPAK, INC., ) | |
| DUOTECH HOLDINGS, INC., DUOTECH ) | |
| PACKAGING, LLC, OLMARC PACKAGING ) | |
| COMPANY, and URBAN MINISTRIES, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court are the summary judgment motions of (1) Urban Ministries, Inc. ("UMI") and (2) DuoTech Holdings, Inc. and DuoTech Packaging, LLC (collectively, "DuoTech"). For the reasons explained below we grant UMI's motion and deny DuoTech's motion.

## BACKGROUND

Plaintiff The Compak Companies, LLC ("TCC") filed its original four-count complaint in 2003. We referred two counts of its complaint to the bankruptcy judge presiding over the bankruptcy of Compak Corporation, which prior to its bankruptcy owned certain assets relevant to this lawsuit. See The Compak Companies, LLC v. Johnson, No. 03 C 7427, 2004 WL 2034083, *3 (N.D. Ill. Sept. 2, 2004). We stayed proceedings as to the remaining counts of TCC's

complaint pending decision on the referred counts.  Id.  The referred counts were finally resolved in June 2009, when we adopted the bankruptcy court's recommendation that we enter summary judgment in favor of the defendants named in those counts.  See Compak Companies, LLC v. Johnson, 415 B.R. 334, 345 (N.D. Ill. 2009).  By that time the remaining claims of TCC's complaint had been stayed for nearly five years, and a key defendant had since made an assignment for the benefit of its creditors.  Accordingly, we scheduled a status hearing to find out whether TCC still wanted to pursue those claims.  At that hearing, which took place on June 3, 2009, we granted TCC's request for more time to weigh its options.  More than six months later TCC still had not taken any steps to move this case forward, so we gave it until March 1, 2010 to file an amended complaint and set a discovery cut-off of June 30, 2010.  TCC finally filed its amended complaint on March 24, 2010, adding new claims and a new defendant, UMI.  On June 9, 2010 we granted the parties a "final extension" of the discovery cut-off date to October 29, 2010.  One week before the deadline TCC moved for another extension, and indicated in its motion that it was "concurrent[ly]" serving discovery requests and deposition notices.  In other words, it had done nothing since it filed its amended complaint.  We denied TCC's motion and set the case for trial.

UMI is named as a defendant in two counts — Counts XII

(requesting relief under the Lanham Act)[1] and XIII (common law trade name infringement) — and has moved for summary judgment based upon the dearth of evidence in the record. In August 1999 Compak Corporation and UMI executed an "Agreement of Understanding" pursuant to which UMI agreed to distribute Compak's "Celebration Cup" product — a container designed to hold wine and communion wafers for religious services. (See Agreement of Understanding between Compak Corporation and UMI, dated August 1, 1999, attached as Ex. F to TCC's Stmt. of Add'l Facts.) The division of UMI responsible for selling the Celebration Cup, among other religion-themed products, was called "Communion Source." (UMI's Stmt. of Facts ¶ 2.) In 2000, while it was still authorized to distribute the Celebration Cup, Communion Source registered the domain name "www.celebrationcup.com." (UMI's Reply to TCC's Stmt. of Facts ¶ 18.)[2] Communion Source sold Celebration Cups from 1999 to 2003, at which point Compak Corporation declared bankruptcy and stopped manufacturing the product. (UMI's Stmt. of Facts ¶ 2.)

TCC maintains that UMI sold a competing communion cup-product manufactured by DuoTech "beginning in or after the spring of 2003."

---

[1] As UMI points out, TCC's complaint cites the Lanham Act's remedies provision without specifying the substantive provision TCC is relying on. In its response to UMI's motion TCC analyzes its claim under 15 U.S.C. § 1125(a) ("False designations of origin, false descriptions, and dilution forbidden"). We will do the same.

[2] TCC implies that this was a breach of the Agreement of Understanding, which prohibited UMI from "using proprietary language with regard to the Celebration Cup." (Pl.'s Stmt. of Add'l Facts ¶ 19.) But it has not asserted a claim for breach of contract.

(TCC's Stmt. of Add'l Facts ¶ 20.)  But there is no evidence to support that proposition.  TCC relies on the declaration of JoeAnn McCLandon, who states that she visited the website "www.celebrationcup.com" in March 2009, and was automatically redirected to the website "www.communionsource.com."  (McClandon Decl. ¶¶ 11-12.)  That website offered for sale the "Chassid Cup," "a competing product that looks like the Celebration Cup."  (Id. at ¶ 13.)  But this was nearly three years after UMI sold its Communion Source division, including its rights to "celebrationcup.com" and "communionsource.com," to DuoTech.  (UMI's Stmt. of Facts ¶ 18; Aff. of C. Jeffery Wright, attached as Ex. A to UMI's Stmt. of Facts, ¶ 7; see also McClandon Decl. ¶ 18 (stating that she learned in mid to late 2007 that UMI sold Communion Source to DuoTech).)  There is no evidence that Communion Source used celebrationcup.com to sell *any* products during the period it was authorized to sell Celebration Cups, or at any point thereafter.

## DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom

in the light most favorable to the nonmoving party.  See <u>Pitasi v. Gartner Group, Inc.</u>, 184 F.3d 709, 714 (7th Cir. 1999).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  "Summary judgment should be denied if the dispute is 'genuine':  'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Talanda v. KFC Nat'l Mgmt. Co.</u>, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

UMI "carries the initial burden of production to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  <u>Outlaw v. Newkirk</u>, 259 F.3d 833, 837 (7th Cir. 2001) (citation and internal quotation marks omitted).  It may satisfy this burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support [TCC's] case."  <u>Id.</u> (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  "Once the moving party satisfies this burden, the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'"  <u>Id.</u> (quoting former Fed.R.Civ.P. 56(e)).[3]

---

  [3] Rule 56 was amended effective December 1, 2010.  Rule 56(c)(1)(B) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

**B.   TCC's Claims Against UMI**

"[T]o prove a claim pursuant to 15 U.S.C. § 1125(a), a plaintiff must show (1) that its trademark may be protected and (2) that the relevant group of buyers is likely to confuse the alleged infringer's products or services with those of plaintiff." H-D Michigan, Inc. V. Top Quality Service, Inc., 496 F.3d 755, 759 (7th Cir. 2007) (citation and internal quotation marks omitted); see also Sullivan v. CBS Corp., 385 F.3d 772, 775-76 (7th Cir. 2004). TCC's trademark registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of [its] ownership of the mark, and of [its] exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a). Furthermore, it creates a "rebuttable presumption of use as of the filing date." Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 504 (7th Cir. 1992) (citing Rolley, Inc. v. Younghusband, 204 F.2d 209, 211 (9th Cir. 1953)). The filing date of TCC's mark was November 17, 2003, which overlaps with the period that Communion Source (then a division of UMI) was allegedly selling a competing product through celebrationcup.com. But as we have already

---

cannot produce admissible evidence to support the fact." Case law interpreting the new rule is sparse, but we read Rule 56(c)(1)(B) to preserve a party's option to "throw[] the ball into the court of the party with the burden of proof." Wilson v. Sundstrand Corp., Nos. 99 C 6944, 99 C 6946, 2003 WL 21961359, *4 (N.D. Ill. Aug. 18, 2003); see Fed. R. Civ. P. 56 (Advisory Committee Notes to 2010 Amendment)("[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

discussed, there is no evidence to support that allegation. All that the evidence shows is that Communion Source acquired the domain name celebrationcup.com in 2000.[4]

Even assuming that Compak Corporation had a protectable mark in 2000, and that TCC is entitled to pursue a claim for infringement of that then-unregistered mark, UMI is still entitled to summary judgment.[5] The Lanham Act requires a likelihood of confusion brought about by the defendant's "use[] in commerce" of the plaintiff's mark. See 15 U.S.C. § 1125(a)("Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* . . . .") (emphasis added). Merely acquiring a domain name is not a commercial use. See Juno Online Services v. Juno Lighting, Inc., 979 F.Supp. 684, 691 (N.D. Ill. 1997) ("The mere 'warehousing' of the domain name is not enough to find that defendant placed the mark on goods or 'used or displayed [the mark] in the sale or advertising of services' as required.") (quoting 15 U.S.C. § 1127 (defining "use in commerce")); see also

---

[4] TCC cites hearsay testimony that a UMI representative told TCC in 2006 that Communion Source had gross annual revenues of $1.8 million and that "the majority of the sales were made online via its website." (McClandon Decl. ¶ 17.) Even assuming that this was admissible evidence, it does not establish that UMI was using "www.celebrationcup.com" to generate those revenues.

[5] TCC erroneously states that Compak Corporation "registered" the mark in 1995. It applied for a registered mark at that time, but its application was abandoned. (See Trademark Electronic Search System ("TESS") Query, attached as Ex. H to UMI's Stmt. of Facts (indicating an abandonment date of October 24, 1997).) TCC's own application, filed in 2003, indicates a "first use in commerce" in 1995. But that adds little to TCC's erroneous statement that Compak Corporation "registered" the mark. See 2 McCarthy on Trademarks and Unfair Competition § 16:19 (4th ed.) ("The registration, per se, is proof of use only as of its filing date, not the date of first use claimed in a use-based application.").

Cline v. 1-888-PLUMBING Group, Inc., 146 F.Supp.2d 351, 369-70 (S.D.N.Y. 2001) (collecting cases to the same effect). TCC asks us to infer use from the fact of registration, (TCC's Resp. at 9), but that would erase the sensible distinction drawn in Juno and many other cases between "mere registration" and "commercial use." HQM, Ltd. v. Hatfield, 71 F.Supp.2d 500, 507 (D. Md. 1999) ("[N]early every Court to have decided whether mere registration or activation of a domain name constitutes 'commercial use' has rejected such arguments.").[6] The fact that in 2009 the websites at issue were linked, and that DuoTech was using celebrationcup.com to sell a competing product, does not create a genuine dispute of fact concerning events three years earlier involving a different party. We conclude that UMI is entitled to summary judgment on TCC's claim for unfair competition under the Lanham Act. Both parties agree that the same analytical framework applies to claims for common law unfair competition. (TCC's Resp. at 13-14; UMI's Reply at 12.) It follows that UMI is entitled to summary judgment on that claim, too.

**C.  UMI's Request for Costs and Attorneys Fees Under 28 U.S.C. § 1927 and 15 U.S.C. § 1117(a)(3)**

UMI requests "its costs and reasonable attorneys' fees

---

[6]/ The cases that TCC relies on, none of which are controlling, are distinguishable in a number of respects. But the most important difference is that we are deciding this case after discovery is closed. Cf. Vulcan Golf, LLC v. Google, Inc., 552 F.Supp.2d 752, 786 (N.D. Ill. 2008) (motion to dismiss). The fact that there are, in theory, several ways that TCC *could have* proven "use" is irrelevant at this stage of the case.

incurred in defending itself against TCC's claims." (UMI's Reply at 15.) Its request is denied. TCC's claims fail because it has not been diligent in pursuing them, not because the claims themselves were frivolous. And we do not fault plaintiff for responding to UMI's motion with what little evidence it could muster to avoid summary judgment.

**D.  TCC's Claims Against DuoTech**

DuoTech, which is also named as a defendant in Counts XII and XIII, orally moved to join UMI's motion without submitting any additional evidence or argument relevant to TCC's claims against it. We granted its motion to join, but as our previous discussion indicates, the claims against UMI and DuoTech involve different factual issues. The testimony of TCC's witnesses supports the inference that DuoTech was using celebrationcup.com to sell a competing product in 2009, at which point "Celebration Cup" was a registered trademark of TCC. And we believe that the manner in which it was used creates a genuine dispute of fact concerning the likelihood of confusion. "Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." CAE,

Inc. v. Clean Air Engineering, Inc., 267 F.3d 660, 677-78 (7th Cir. 2001). There is no evidence of actual confusion or an intent by DuoTech to "palm off" its product as TCC's. Moreover, TCC's evidence concerning the strength of its marks is equivocal and self-serving. (See McClandon Decl. ¶ 7 (stating that TCC had invested in marketing the "Celebration Cup" product, without indicating whether the mark had taken hold in the market).) These are important factors weighing against a finding of likelihood of confusion, but they are not necessarily fatal to TCC's claim. See Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 812 (7th Cir. 2002) (finding that plaintiff showed a "fair likelihood" of succeeding on the merits of its claim despite not citing any evidence concerning the strength of its mark or actual confusion); see also CAE, 267 F.3d at 685 ("Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists.") (internal citations omitted). TCC's registered mark and the domain name are virtually identical. Id. Neither party has provided a picture of the "Chassid Cup," but DuoTech has not disputed TCC's contention that the product resembles the "Celebration Cup." DuoTech and TCC are — or were in 2009 — competitors targeting the same consumers on the Internet. Id. Internet consumers, as a group, are "not amenable to any broad generalizations regarding sophistication." Trans

Union LLC v. Credit Research, Inc., 142 F.Supp.2d 1029, 1043 (N.D. Ill. 2001). But these appear to be inexpensive products, see id. ("[p]urchasers of inexpensive products generally pay less attention to their transactions than do consumers of high-priced goods")(citation and internal quotation marks omitted), and shoppers on the Internet are potentially less vigilant than they would be when patronizing a brick-and-mortar store. Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1057 (9th Cir. 1999) ("In the Internet context, in particular, entering a web site takes little effort-usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership.").

It is unclear from the declarations filed by TCC whether the content of www.communionsource.com would have dispelled any confusion about the relationship between the Chassid Cup and the Celebration Cup. But the method by which the websites were linked supports an inference of "initial interest confusion." Promatek, 300 F.3d at 812 ("Initial interest confusion, which is actionable under the Lanham Act, occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated."). Although the factual record is sparse, we do not believe that the

evidence is "so one-sided" that we should enter summary judgment in DuoTech's favor.  <u>Cf.</u> <u>Board of Regents of University of Wisconsin System v. Phoenix Intern. Software, Inc.</u>, — F.3d —, 2010 WL 5295853, *7 (7th Cir. Dec. 28, 2010)(slip op.)(likelihood of confusion is a question of fact for the jury unless "the evidence is so one-sided that there can be no doubt about how the question should be answered.") (citation and internal quotation marks omitted).

## **CONCLUSION**

UMI's motion for summary judgment (136) is granted.  DuoTech's oral motion for summary judgment is denied.

DATE:        February 17, 2011

ENTER:       _____
             John F. Grady, United States District Judge